## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| ANGELA S. BENNETT, | ) CASE NO. 3:23-CV-01595-JRK |
| | ) |
| Plaintiff, | ) JUDGE JAMES R. KNEPP, II |
| | ) |
| v. | ) |
| | ) MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) CARMEN E. HENDERSON |
| | ) |
| | ) **REPORT & RECOMMENDATION** |
| Defendant, | ) |

### I. Introduction

Plaintiff, Angela S. Bennett ("Bennett" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

### II. Procedural History

On September 21, 2021, Claimant filed applications for DIB and SSI, alleging a disability onset date of September 20, 2021. (ECF No. 9, PageID #: 70). The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On August 3, 2022, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*Id.*). On October 3, 2022,

1

the ALJ issued a written decision finding Claimant was not disabled. (*Id.* at PageID #: 70-87). The ALJ's decision became final on June 20, 2023, when the Appeals Council declined further review. (*Id.* at PageID #: 56).

On August 15, 2023, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 13, 15, 17). Claimant asserts the following assignments of error:

> (1) The ALJ opinion errs at step three by failing to consider whether her severe impairments met or medically equaled listing 1.18.
>
> (2) The ALJ opinion errs by failing to adequately account for the extent of Plaintiff's surgical history and the associated more mysterious, chronic, and variable nature of her pain.
>
> (3) The ALJ opinion erred by not developing the record as required.

(ECF No. 13 at 1).

### III. Background

#### A. Relevant Hearing Testimony

> The ALJ summarized the relevant testimony from Claimant's hearing:
>
> In reports to the agency, the claimant alleged that she is unable to work due to depression, anxiety, Hashimoto's, fibromyalgia, migraines, and irritable bowel syndrome. She added that she stopped working because of her conditions, her pain continues to get worse, she has a mass on her spinal cord, which may be causing the leg and back pain, some days she feels like she has a "foggy brain," some days she can function better than others, and changes in the weather sometimes plays a factor (Exs. B1E, B4E, & B7E).
>
> In an Adult Function report, the claimant alleged that she has some days where she does not get out of bed, she has trouble sitting and standing, and she has cramps, spasms, and numbness in her legs and feet. The claimant added that she has trouble sleeping, and sometimes it is hard to bend when dressing, bathing, and shaving. She noted that she needs motivation and reminders to complete housework, she does not do yard work, she has trouble getting along with others due to mood swings, and she noted issues with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, memory, completing tasks, concentration, and understanding and following instructions.

The claimant also noted difficulties with handling stress, and changes in her routine. The claimant also acknowledged that she cares for her kids daily, including driving them to activities, and attending school functions. She also noted that she cares for pets by making them chop salads and filling water bowls. The claimant noted that she can care for her personal needs, she can dress, bathe, care for her hair, shave, feed herself, and use the toilet. She further noted that she does not need reminders to take care of her personal needs or to take her medication. She noted that she prepares meals daily, she does light cleaning, laundry, and dishes at home with breaks in between. The claimant added that she can drive a car, she shops by phone and mail, and she can pay bills, count changes, handle a savings account, and manage a checkbook. The claimant noted she spends time with others, in person, on the phone and over video chat, and she goes to her doctor appointments on a regular basis. The claimant acknowledged that she gets along with authority figures "good," she has never been fired from a job because of problems getting along with others (Ex. B3E).

During the hearing, the claimant testified that she lives with her 2 daughters, age 14 and 17, and she is 5'4" and weighs 259 pounds. The claimant also detailed her past work. She testified that she is unable to work due to injuries from working at Therma True, including a shoulder, back, and hand injuries. She alleged she has pain that radiates from her back to her feet, and if she sits or stands for too long, her feet go numb. The claimant also noted that she has a lipoma, but Cleveland Clinic told her it would not be beneficial to have it removed. She stated she can stand for 5-30 minutes, depending on the day, she can sit for 15 minutes before having to get up, and she can lift a gallon of milk. She said she had a procedure on her back as a child and as an adult, they removed an extra bone in her back. The claimant also stated that she had two carpal tunnel releases. She stated she is right-handed, and she needs a shoulder replacement, but she is too young. She was also told that injections in her shoulder were denied by her insurance. She alleged that she has migraines a couple times a week and that they have improved with medication. She stated that her migraines last 6-8 hours. The claimant stated that she has depression and anxiety, she takes Adderall, and she has "foggy brain," which makes it hard for her to comprehend. The claimant also noted that she has a Hashimoto thyroid disorder, which can cause mood swings and weight gain, she gets anxiety around groups of people, and she has fibromyalgia. On her typical day, the claimant alleged that she tries to load the dishwasher and does a load of laundry. On some days she can help mop the floor and on other days she spends the day in bed. She stated that if she over does it, it takes her 2-3 days to recover, she does not get out of bed 3-4 days per week for the last month and a half. When lifting a gallon of milk, she uses both hands, she drops things, and she uses an electric card with she goes to the grocery store. When she gets a migraine, she uses cold compresses, when she has anxiety, she has a racing heart and paranoid thoughts. She said it feels like an elephant on her chest. The claimant stated she is tired all the time and her muscle relaxers make her tired. She noted that she does not sleep well at night, she screams and hollers in her sleep, and she takes naps daily. When her legs swell, she lies down and take Lasik pills. The

3

>claimant further testified that she has bipolar disorder, she has mood swings, and she cannot reach above her head. She noted that she has had surgery on her right shoulder three times, and she has irritable bowel syndrome, that causes her to take frequent bathroom breaks and nausea. Finally, she noted that she is doing counseling and acupuncture.

(ECF No. 9, PageID #: 77-78).

### B. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

>As for the medical evidence, the record contains a consultative exam from January 21, 2016. The exam is dated 5 years prior to the alleged onset date. As such, the finding and the opinions in this evaluation are not relevant to this decision. Nevertheless, the undersigned has fully considered and accommodated for the claimant's history of depression and anxiety (Ex. B1F).

>The record also contains treatment records dated prior to 2021. While reviewed, the evidence dated prior to September 2021, does not provide pertinent information with regard to the claimant's ability to work as of September 20, 2021, her alleged onset date. Nevertheless, the claimant's history of anxiety, depression, bipolar disorder, Hashimoto's thyroid disorder, irritable bowel syndrome, migraines, lumbar, thoracic, and cervical pain with lesion (Exs. B2F, B3F, B12F, B13F, & B14F) was considered and accommodated for in the claimant's residual functional capacity.

>As for the relevant evidence dated as of September 2021, the claimant received care at the Community Memorial Health on September 20, 2021, for a possible meniscus tear of the left knee. Radiographs revealed no acute bony abnormality but did show lateral tracking of the patella in the patellofemoral and mild subchondral sclerosis along the medial compartment. The claimant's neurological, psychiatric, skin, cardiovascular, and respiratory exams were normal, and she had full range of motion in her cervical spine. However, she had tenderness in her spine and SI joints, she had positive Patrick's tests on both sides, her straight leg raises were positive beyond 60 degrees, patellofemoral crepitus was felt throughout range of motion, and she had mild to moderate effusion (Exs. B13F/60-63). An October 18, 2021, MRI of the left knee showed a chronic sprain of the proximal aspect of the fibular collateral ligament without tear, some soft tissue scarring involving Hoffa's fat, likely due to prior knee surgery/procedure, and trace joint effusion (Ex. B13F/52-55).

>In October 2021, the claimant was evaluated for her left carpal tunnel syndrome (Ex. B14F/271). On December 3, 2021, the claimant had a left carpal tunnel release. The procedure notes indicate that the surgery was a success, and the claimant was discharged in a stable condition (Ex. B13F/45-46). At her two-week

follow-up, she was going well, she reported that her numbness and tingling was much improved and that she only has intermittent pain. She also noted that she was sleeping better (Ex. B13F/37). At her 6-week follow-up, she noted continued improvement, but noted that her hand was tender and that bumping it caused pain (Ex. B13F/33). As of February 16, 2022, the claimant's surgical wounds were healed, but she still had pain, numbness, and tingling (Ex. B13F/29). By March 30, 2022, the claimant noted that she had improved significantly. In fact, her pain was a 0 out of 10, and she noted that her hand feels a lot better (Ex. B13F/24).

An October 18, 2021, MRI of the lumbar spine showed a lipoma at T12-L1, posterior bony bridging at T12-L1 with some deformity extending up to T11, moderate bilateral facet hypertrophic facet arthropathy from L2-S1, disc height loss with desiocation and minimal bulging at L4-5, and L5-S1 and neural foramina present bilaterally at L4-5, and L5-S1 (Ex. B14F/277).

On November 12, 2021, the claimant was evaluated for leg pain and difficulty walking. A Lumbar MRI showed no central or foraminal stenosis. A venous scan, and thoracic MRI was ordered (Ex. B4F & B15F). A November 21, 2021 venous doppler was negative for deep vein thrombosis (Ex. B13F/294). A November 30, 2021, MRI of the thoracic spine confirmed the lipoma as well as degenerative changes at the mid thoracic spine, and stenoses at T5-T11 (Ex. B14F/295).

The claimant received care in November 2021, for a recheck after receiving her medical marijuana card. She noted improvement in her pain. Her active diagnoses including lumbago with sciatica, depression, Hashimoto's thyroiditis, and migraines. Upon review, the claimant complained of mood swings, but denied hallucinations and suicidal ideations. She was fully oriented, she had full range of motion in her cervical spine, her cardiovascular, respiratory, and neurological exams were unremarkable, she had normal reflexes and a normal gait, and her mental status was grossly normal. Specifically, the claimant had a normal thought process, she was cooperative, and her affect, speech, and activity/motor behavior were all normal (Ex. C3F/18-22).

On January 6, 2022, January 26, 2022, February 9, 2022, February 17, 2022, February 23, 2022, March 9, 2022, April 6, 2022, and April 21, 2022, the claimant received chiropractic manipulation to improve her range of motion and decrease discomfort in her spine (Exs. B13F/86-118).

A February 23, 2022, MRI of the cervical spine showed incidental minor posterior disc bulging at C4-C5 level and mid posterior disc bulging at C5-C6 level without spinal cord or nerve toot compression (Ex. C14F/331).

A March 22, 2022 chest x-ray was unremarkable (Ex. C14F/237).

The claimant received evaluations for her lipoma at the Cleveland Clinic in January 2022. The claimant complained of low back pain that radiates into her

legs, numbness and tingling in her legs, and difficulty walking, but her exam was negative for joint swelling. She was well developed and nourished, she was in no apparent distress, she was full oriented, her mood was pleasant and her affect was benign (Ex. B7F).

On March 3, 2022, the claimant was evaluated at the Cleveland Clinic by Pavan Tankha. She was diagnosed with fibromyalgia, depression, anxiety, post-traumatic stress disorder, bipolar disorder, and chronic pain disorder. Upon examination, the claimant was well nourished, alert, with normal motor and sensory, even breathing, no edema, and normal speech. In addition, her cranial nerves were intact, and her mental status was intact (Ex. B16F/8F). On March 7, 2022, she attended a comprehensive problem evaluation over Zoom. Due to her pain, obesity, irritable bowel disease, thyroiditis, and stress, lifestyle changes, acupuncture, therapy, diet changes, increased physical activity, and breathing exercises were all recommended (Exs. B16F/75-81). A March 15, 2022, psychological evaluation was positive for irritable mood, difficulty controlling her anxiety, brain fog, and financial stress. However, she denied hallucinations, delusions, her motor activity was within normal limits, she did not have suicidal ideations, her judgement and insight were good, her attention span and concentration were normal, and she was fully oriented. Moreover, she was fully cooperative, her eye contact was good, her affect was euthymic, and her speech was clear, coherent, and relevant. Her thoughts were logical and relevant (Ex. B16F/67-73). The next day, she was envaulted for Pain Recovery and was recommend she start the wellness program (Ex. B16F/66). On March 31, 2022, the claimant noted that she was using the mind/body tools at minimal intervals since last session (Ex. B16/53). On April 11, 2022, the claimant complained of continued pain, fatigue, insomnia, hair loss, poor memory, ankle swelling, and weight gains (Ex. B16F/47). The claimant engaged in therapy on April 22, 2022, April 29, 2022, May 5, 2022, May 19, 2022, June 2, 2022, June 30, 2022, July 7, 2022, July 20, 2022, July 28, 2022, and August 4, 2022. At the most recent evaluation, the claimant noted that she was using the mind/body tools at moderate intervals since last session, she had normal grooming and hygiene, she was oriented to time, oriented to place, she was cooperative, her mood was anxious and depressed, and her affect was reactive and mood congruent. Moreover, her speech was tangential, her thought process was goal directed and logical, her thought content was normal, there was no evidence of suicidal ideations, homicidal ideations, hallucinations, or delusions, her short-term and long-term memory was intact, and her insight and judgment were fair (Ex. B16F/1).

A February 15, 2022, x-ray of the claimant's right knee was unremarkable (Ex. B10F/42). An x-ray of the cervical spine taken the same day was unremarkable (Ex. B10F/40).

On February 15, 2022, March 22, 2022, April 19, 2022, and May 17, 2022, the claimant received care at Community Memorial Health for a follow-up appointments. She received care for her neck pain, cervicalgia, obesity, acute

cough, lumbago, migraines, and insomnia. During all four appointments the claimant had a full range of motion in her cervical spine and neck, her thyroid was normal, and her cardiovascular, gastrointestinal, neurological, and psychiatric examinations were all unremarkable. In fact, she was fully oriented, had a normal gait and reflexes, and her insight and judgment were good (Ex. B12F/102-133).

A March 30, 2022, x-ray of the claimant's right shoulder showed no fracture and was unremarkable besides postoperative changes (Ex. B14F/355). In April 2022, the claimant started psychical therapy for her right shoulder pain (Exs. B13F/6-21). On April 27, 2022, the claimant was evaluated for her partial thickness rotator cuff tear and an MRI was ordered (Ex. B13F/1-5). The MRI showed small subacromial subdeltoid bursitis and a limited evaluation of the rotator cuff due to susceptibility artifacts emanating from prior rotator cuff surgical fixation material in the proximal humerus. The visualized portions of the rotator cuff tendons were grossly intact (Ex. B14F/395). As of May 25, 2022, the claimant reported pain 4-5 out of 10 and she noted that raising the shoulder overheard caused her pain to worsen. Her pain was relieved without narcotics, as she noted Flexeril and Advil were effective (Ex. B13F/132). Her CT arthography steroid injection of the right shoulder was successful on June 14, 2022 (Ex. B14F/409). An anthrogram of the right shoulder taken the same day was unremarkable (Ex. B14F/411). On June 29, 2022, the claimant once again reported pain 4-5 out of 10 and she noted that raising the shoulder overheard caused her pain to worsen. Her pain was relieved without narcotics, as she noted Flexeril and Advil were effective (Ex. B13F/127).

On June 1, 2022, the claimant had a sleep study. Sleep apnea was not shown, but the claimant did demonstrated vocalizations in NREM sleep (Ex. B16F/18).

In addition to the treatment records, the claimant attended a psychological consultative exam on December 20, 2021. Jinhui Wang, Psy.D., diagnosed the claimant with an unspecified depressive disorder and an unspecified anxiety disorder. Upon examination, her intellectual functioning was estimated in the average range, she was cooperative and displayed average social skills during the evaluation, and she was dressed and groomed appropriately without any sign of intoxication. She exhibited no eccentric behaviors, impulsivity or compulsivity, her conversational speed was within normal limits, her expressive language was intelligible, and her receptive language skills appeared adequate. She displayed no loose associations or flight of ideas, her thought content was normal, and she appeared sad during the evaluation, but affect lability was not observed. Her affect was congruent with verbal content, she denied presence of suicidal or homicidal thoughts, and there was no signs of hostility or aggressiveness. The claimant appeared stressed, but there was no evidence of apprehension, vigilance, scanning, fear, or sensing impending doom. She was alert, responsive and oriented to person, place, time and situation and there were no overt indications of delusional belief or behavioral manifestation of hallucination. She was not confused and did not lack awareness of her past or present situation, impairment in attention and concentration was not observed, and distractibility was not

observed. Overall, her concentration and persistence appeared satisfactory, and she was able to remain on task and work at an adequate pace during the clinical interactions across the evaluation. The claimant was aware of the purpose of the examination and self-reported psychological challenges and there is no indication of inability to self-identify or self-report mental difficulties. Impairment of reasoning and judgment was not observed and there was no indication of excessive vulnerability to exploitation or that she has come to the attention of the authorities for deficient judgment (Ex. B5F & B6F).

(ECF No. 9, PageID #: 79-83).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2026.

2. The claimant has not engaged in substantial gainful activity since September 20, 2021, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: obesity; degenerative disc lumbar spine; thoracic spine degenerative disc disease; intradural lipoma; Hashimoto's disease; fibromyalgia; carpal tunnel syndrome of the bilateral upper extremities, status post release surgeries; chronic pain disorder; sprain of the left knee; shoulder impairment; posttraumatic stress disorder; major depressive disorder; bipolar disorder; and generalized anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She can never climb ladders, ropes, or scaffolds. She should avoid workplace hazards such as unprotected heights and dangerous moving mechanical parts. She can occasionally push and pull with the bilateral upper extremities. She should avoid working in conditions of vibrations and avoid working in conditions of loud noise as defined in the D.O.T. She can occasionally operate hand controls such as gear shifts and knobs with the bilateral upper extremities. She is limited to simple tasks in a routine work setting, but not at a production rate pace, for example, no assembly line work. She is limited to occasional changes in the workplace that are well

explained in advance. She can occasionally interact with supervisors, coworkers, and the general public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

. . .

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 20, 2021, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(ECF No. 9, PageID #: 72-73, 76-77, 86-87).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial

evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises three issues on appeal, arguing that the ALJ failed to (1) consider whether Claimant's impairments met or medically equaled Listing 1.18; (2) account for Claimant's surgical history and "the associated more mysterious, chronic, and variable nature of her pain;" and (3) develop the record.

10

**1. The ALJ did not err in considering Listing 1.18.**

Claimant first argues that the "ALJ erred at step three of the sequential analysis by failing to consider whether her severe physical impairments met or medically equaled listing 1.18." (ECF No. 13 at 7). To meet a listing, the claimant "must satisfy all of the [listing's] criteria." *Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at *3 (6th Cir. Aug. 10, 2020). The claimant "bears the burden of showing that an impairment meets or equals a listed impairment." *Id.* If the ALJ's listing finding is supported by substantial evidence, based on the record as a whole, the Court will defer to the ALJ's findings, "[e]ven if the record could support an opposite conclusion." *Id.* at *4. Moreover, if the ALJ's listing finding is not supported by substantial evidence, the error is harmless if the claimant cannot show that her impairments met or medically equaled a listing. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014).

> Listing 1.18 provides:
>
> 1.18 Abnormality of a major joint(s) in any extremity (see 1.00I), documented by A, B, C, and D:
>
> A. Chronic joint pain or stiffness.
>
> AND
>
> B. Abnormal motion, instability, or immobility of the affected joint(s).
>
> AND
>
> C. Anatomical abnormality of the affected joint(s) noted on:
>
> 1. Physical examination (for example, subluxation, contracture, or bony or fibrous ankylosis); or
>
> 2. Imaging (for example, joint space narrowing, bony destruction, or ankylosis or arthrodesis of the affected joint).
>
> AND

> D. Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following:
>
> 1. A documented medical need (see 1.00C6a) for a walker, bilateral canes, or bilateral crutches (see 1.00C6d) or a wheeled and seated mobility device involving the use of both hands (see 1.00C6e(i)); or
>
> 2. An inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4), and a documented medical need (see 1.00C6a) for a one-handed, hand-held assistive device (see 1.00C6d) that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand (see 1.00C6e(ii)); or
>
> 3. An inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.18.

> The ALJ specifically discussed Listing 1.18, explaining:
>
> The claimant's impairments failed to meet the listing for 1.18 (Abnormality of a major joint(s) in any extremity), because the record, consistent with findings below, does not demonstrate, amongst other missing findings, impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following: a documented medical need (see 1.00C6a) for a mobility device involving the use of both hands (see 1.00C6e(i)); or an inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4), and a documented medical need (see 1.00C6a) for a one-handed, hand-held assistive device (see 1.00C6d) that required the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand (see 1.00C6e(ii)); or an inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4).

(ECF No. 9, PageID #: 74).

Claimant asserts that "the record contains evidence which makes it plausible that Plaintiff could have satisfied the 1.18 listings" but the ALJ "only even purported to address finding 'D'"

12

without considering whether Claimant's impairments were medically equivalent to the listing. (ECF No. 13 at 8-10). Claimant argues that "Listing 1.18 addresses abnormality of a major joint(s) in any extremity" and she "lives with conditions amounting to abnormality of major joints in *every* extremity." (*Id.* at 10).

The Commissioner responds that Claimant's contention that the ALJ failed to consider Listing 1.18 "is plainly belied by the decision, which expressly states that Plaintiff did 'not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments,' and which devotes a paragraph to Listing 1.18." (ECF No. 15 at 8). The Commissioner argues that "to demonstrate that her impairment or impairments medically equal a listing, Plaintiff must still 'present medical findings equal in severity to *all* the criteria for the one most similar listed impairment,' and "[w]hile Plaintiff discusses her medical history at length, she makes no effort to tie that evidence to specific criteria under Listing 1.18." (*Id.* at 9 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990))). Citing Social Security Ruling 17-2p, the Commissioner argues that if the ALJ "believe[d] that the evidence already received in the record d[id] not reasonably support a finding that the individual's impairment(s) medically equal[ed] a listed impairment, the adjudicator [was] not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment." (*Id.*). Finally, the Commissioner argues that the ALJ relied on two State agency opinions to support that Claimant did not meet or equal a listing and Claimant cannot "point to any medical opinion that would support medical equivalency." (*Id.* at 9-10).

The Court agrees with the Commissioner. Regarding whether Claimant met the listing, the ALJ explained that the record did not contain evidence to support the (D) criteria and Claimant points to no evidence to show that she could in fact satisfy the (D) criteria. Because

Claimant "must have a medically determinable impairment(s) that satisfies *all* of the criteria of the listing," the failure to meet the (D) criteria is sufficient to conclude that Claimant did not meet the listing. *See* 20 C.F.R. § 404.1525(d). To the extent Claimant argues that her impairments were medically equivalent to Listing 1.18, she still "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 531. While Claimant points to problems with multiple joints and various medical records, she does nothing to show how the "findings related to [her] impairment . . . are at least of equal medical significance to the required criteria." 20 C.F.R. § 404.1526(b). Because Claimant failed to present "specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency," the ALJ did not err in failing to provide additional analysis at step three. *Vickers v. Comm'r of Soc. Sec.*, No. 20-1935, 2021 WL 4468414, at *4 (6th Cir. July 12, 2021) (quoting *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004)).

**2. The ALJ did not err in her consideration of Claimant's medical history.**

In Claimant's second argument, she asserts that she "has endured more than 20 procedures" but the "ALJ opinion fails to so much as mention most of the surgeries." (ECF No. 13 at 14). She argues that this shows the ALJ did not properly assess her chronic pain and failed to build an accurate and logical bridge between the evidence and her conclusion that Claimant was not disabled. (*Id.* at 15).

The Commissioner responds that Claimant's "focus on remote surgeries is misplaced" because the alleged disability onset date was in September 2021 and "the ALJ's focus was understandably on the records from that time going forward." (ECF No. 15 at 10). The Commissioner argues that "while the ALJ considered Plaintiff's allegations and found that her

14

severe impairments included a chronic pain disorder, she reasonably concluded that the record did not support the degree of physical limitation Plaintiff alleged." (*Id.* at 11). The Commissioner asserts that Claimant's argument "is, at most, a wish that the ALJ had weighed the evidence differently." (*Id.*).

The Court again agrees with the Commissioner. While Claimant faults the ALJ for not discussing her "more than 20 procedures," *all* the surgeries she argues the ALJ failed to discuss occurred *before* the alleged onset date. (*See* ECF No. 13 at 14). The ALJ specifically indicated that "[w]hile reviewed, the evidence dated prior to September 2021, does not provide pertinent information with regard to the claimant's ability to work as of September 20, 2021, her alleged onset date." (*Id.* at 79). Additionally, not one of the records Claimant cites regarding these surgeries are actual records from the procedures or follow-up care but rather her own reports to providers and notes regarding surgical history. (*See, e.g.*, ECF No. 9, PageID #: 370, 384). But "disability is determined by the functional limitations imposed by a condition" and these records—which simply indicate the procedures occurred—do nothing to "shed light on [Claimant's] level of impairment during th[e] relevant time." *Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 589 (6th Cir. 2019).

Because the ALJ adequately explained that the medical records prior to the alleged onset date were not relevant to the period at issue and Claimant has failed to point to records that would negate that conclusion, the ALJ did not err in considering her medical history.

### 3. The ALJ did not fail to develop the record.

Claimant argues that the "record was not properly developed in this case, and this failure to develop the record amounts to error." (ECF No. 13 at 17). Claimant focuses her argument on her belief that the "ALJ did not express interest in or have follow-up about the Plaintiff's detailed

15

answers to dozens of questions by her representative;" the ALJ lacked understanding of the record; and the ALJ failed to "pay close attention to the vocational testimony." (*Id.* at 17-18). Claimant also appears to argue that the ALJ prejudged her claim, pointing to a statement in the transcript indicting claimant appeared in person when she actually appeared by phone. (*Id.* at 18). Finally, Claimant argues that the ALJ's statement that she was not bound by prior unfavorable determinations amounts to a promise that "the ALJ will be reopening the period of the December 6, 2017, Notice of Dismissal" of Claimant's previous application. (*Id.* at 18).

The Commissioner responds that Claimant's argument is without merit because Claimant "does not contend that medical records are missing or that the ALJ should have sought additional expert medical opinions. Rather, she faults the ALJ for not asking more follow-up questions during Plaintiff's administrative hearing." (ECF No. 15 at 12). Additionally, the Commissioner argues that the "ALJ's hearing statement that there had 'been some unfavorable determinations on [Plaintiff's] claims' and that she was 'not bound by the prior determinations and will make a brand new decision' had nothing to do with the 2017 order of dismissal" but rather the ALJ was "referring to state agency determinations made initially and on reconsideration concerning Plaintiff's current claims." (*Id.* at 13).

Claimant is correct that "[a]n ALJ has a duty to develop the record" and "[t]his duty is heightened where the claimant is not represented by counsel." *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 262 (6th Cir. 2015) (citing *Lasley v. Sec'y of Health & Hum. Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983) and *Sims v. Apfel*, 530 U.S. 103, 111 (2000)). "The determination of whether an ALJ has failed to fully develop the record must be made on a case-by-case basis." *Id.*

Here, the Court finds no error. Claimant was represented by counsel during the hearing such that the "heightened" duty to develop the record did not apply. *Id.*; *Staymate v. Comm'r of*

16

*Soc. Sec.*, 681 F. App'x 462, 468 (6th Cir. 2017). While Claimant objects to the ALJ's failure to ask follow-up questions during her representative's examination, an ALJ has discretion in determining what evidence is necessary. *See Staymate*, 681 F. App'x at 468 (rejecting claimant's argument that ALJ failed to develop the record when he interrupted claimant's response to a question and did not allow him to answer). Given that the ALJ asked independent questions before turning questioning over to the representative (*see* ECF No. 9, PageID #: 99-114), the Court finds no error in the ALJ's decision not to ask additional questions. Nor does the Court believe that the ALJ asking Claimant to explain why she feels she is unable to work or to explain her problems with her back indicates a lack of familiarity with the record. Concerning Claimant's argument that the ALJ erred by not asking the vocational expert to clarify her testimony regarding the tolerance for absences, clarification was not necessary. Specifically, while Claimant argues that "missing consecutive days in a row for consecutive weeks—on its face literally indicates at least 14 days, more, not less, than 12 absences per year," the Court notes that missing two consecutive days for three consecutive weeks (for a total of six absences) would amount to "missing consecutive days in a row for consecutive weeks" without going over the twelve absences per year the vocational expert referenced.

Claimant's additional arguments boarder on frivolous. The cited statement that "claimant appeared in person" is from the introductory portion of the transcript detailing when and where the hearing occurred and who was present, not in the actual transcription of the proceedings. (ECF No. 9, PageID #: 95). Claimant points to nothing indicating that the ALJ had control over this portion of the transcript. The ALJ specifically noted that the hearing was being conducted over the phone. (*Id.*). Further, even if attributable to the ALJ, this simple statement in no way indicates that the ALJ prejudged the claim.

17

As to the time period at issue, during the hearing the ALJ stated: "So we're here today because there have been some unfavorable determinations on your claims. I am not bound by the prior determinations and will make a brand new decision based upon all of the evidence . . . ." (*Id.* at PageID #: 97). The Court agrees with the Commissioner's interpretation that the ALJ was referring to the previous agency determinations with relation to Claimant's current application rather than the previous December 2017 dismissal. The record confirms that at the hearing, the ALJ specifically indicated that the issues before her "were reflected in the Notice of Hearing," which specifically indicates that "[t]he hearing concerns your application of September 22, 2021." (*Id.* at PageID #: 97-98, 264). Additionally, the ALJ specifically indicated that she would make a "brand new decision" on the application before her, which alleged disability beginning in 2021. Claimant points to nothing indicating that the ALJ did not properly render a decision on her current claim or cite any authority indicating that the ALJ could reopen the previous determination of a separate time frame. *See Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 933 (6th Cir. 2018) ("Res judicata bars attempts to relitigate the same claim, but a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994.").

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: May 16, 2024

s/ *Carmen E. Henderson*<br>
CARMEN E. HENDERSON<br>
U.S. MAGISTRATE JUDGE

---

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).